363 A.2d 1281
**COMMONWEALTH of Pennsylvania**
v.
**Shirley JONES, Appellant.**

Superior Court of Pennsylvania.
Argued March 8, 1976.
Decided Sept. 27, 1976.

304

Joshua D. Lock, Philip D. Freedman, Harrisburg, for appellant.

Marion E. MacIntyre, 2nd Asst. Dist. Atty., Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant was convicted by a jury of two counts of delivery of heroin.[1] Appellant contends that the court

1. The Controlled Substance, Drug, Device and Cosmetic Act, April 14, 1972, P.L. 233, No. 64, § 13; as amended; 35 P.S. § 780–113(a)(30).

erred in denying her pre-trial motion to sever the two charges, and in instructing the jury that the defendant had the burden of proving entrapment by a preponderance of the evidence.

Appellant concedes that the Commonwealth's evidence, if believed, was sufficient to prove her guilt beyond a reasonable doubt. At trial, the Commonwealth relied primarily on the testimony of Brenda Townes, an undercover narcotics agent employed by the Pennsylvania Bureau of Drug Control, who operated in the Harrisburg area from December 24, 1974, until February 26, 1975. In her undercover work, Agent Townes employed Edgar Smith, a known heroin addict, as an informant and as a means of introduction in the community. According to Agent Townes, she and Smith went to an apartment located at 1901 Green Street at approximately 8:00 p. m., on February 18, 1975. Appellant opened the door and stated "I only have one thing here." Appellant then gave Agent Townes one bag of heroin in exchange for $10. Approximately two hours later, Agent Townes and Smith returned to the apartment and purchased a second bag of heroin.

Appellant defended the first charge by testifying that she was not at the Green Street apartment until 9:45 p. m., on February 18. In support of her alibi, appellant called the lessee of the apartment and another individual. In regard to the second charge, appellant testified that she was a user of heroin and, therefore, had one bag for her personal use. She testified that she sold the heroin to Smith, not Agent Townes, and did so only because Smith pleaded with her and told her that he was undergoing withdrawal.[2] The jury, however, convicted appellant on both counts.

2. Smith died in March, 1975; the trial was held on May 27, 1975. Agent Townes admitted that Smith and appellant engaged in a short conversation out of her hearing. Evidently, the jury accepted Agent Townes's version of the events.

We recently summarized the applicable standards for the consolidation of charges at one trial: "The test of whether consolidation is proper is related to the test of whether evidence of one crime may be admitted at the trial for another. The present rule in Pennsylvania is that consolidation is proper (*i. e.*, the denial of a motion for severance is not an abuse of discretion) if (1) the facts and elements of the two crimes are easily separable in the minds of a jury; and (2) the crimes are such that the fact of the commission of each crime would be admissible as evidence in a separate trial for the other. *Commonwealth v. Irons*, 230 Pa.Super. 56, 62, 326 A.2d 488, 491 (1974), interpreting the plurality decision in *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973). *See also Commonwealth v. Mullen*, 228 Pa.Super. 207, 324 A.2d 410 (1974) (charge such that jury could not easily separate the crimes, despite possibility of common scheme." *Commonwealth v. Terrell*, 234 Pa.Super. 325, 328, 339 A.2d 112, 114 (1975).[3]

**3.** The lead opinion in *Peterson* (Eagen, J., joined by Jones, C. J., and O'Brien, J.) did not create a specific requirement that evidence of each crime be admissible if there were a separate trial on each. Rather, the lead opinion held that the admissibility test was in fact not met, but that the evidence was capable of separation by the jury and, therefore, joinder was permissible. Mr. Justice Pomeroy filed a Concurring Opinion in which he expressed the belief that the admissibility test was satisfied. The three dissenters (Roberts, J. joined by Nix and Manderino, JJ.) agreed that the admissibility test was not met, but took the position that in such a situation, the defendant should have an absolute right to severance upon timely motion. This position is recommended by the ABA Standards. See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance, § 2.2 (Approved Draft, 1968).

In *Commonwealth v. Irons,* supra at 62, 326 A.2d at 491, we said: "Given this division of the Supreme Court it is not apparent what is the Pennsylvania rule where the crimes although easily separable are not such that evidence of one would be admissible at a separate trial of the other. It is apparent, however, that all the justices are in agreement that consolidation is proper (i. e., the trial judge will not abuse his discretion by denying a motion for severance) if the crimes are both easily separable and are such that evidence of one would be admissible at a separate trial of the other." Thus, our Court has applied a test that, at a minimum, would satisfy all the justices of the Supreme Court.

308

In the instant case, the two crimes charged were identical in all respects except for the time of delivery, the second sale occurring two hours after the first sale. The Commonwealth's evidence concerning the actual commission of the two crimes was extremely short, consuming less than two hours of actual testimony. There is no reason to believe that the jury could not separate the two crimes. Furthermore, appellant's testimony created a ready means of demarcation: the defense to the first crime was alibi, while the defense to the second crime was entrapment. Thus, the first of the conditions for consolidation has been satisfied. Cf. *Commonwealth v. Loch*, Pa.Super., 361 A.2d 758 (1976) (J. 789/1975, filed March 29, 1976).

Generally, evidence of another crime is inadmissible "because the fact of the commission of one crime is not proof of the commission of another crime; it is merely proof of a bad character which cannot support an inference of guilt." *Commonwealth v. Terrell*, supra at 329, 339 A.2d at 114. However, evidence of another crime is generally admitted when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design involving incidents so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial. *Commonwealth v. Terrell*, supra. *See also Commonwealth v. Peterson*, supra; *Commonwealth v. Schmidt*, 452 Pa. 185, 299 A.2d 254 (1973); *Commonwealth v. Irons*, supra; *Commonwealth v. Mullen*, supra. If the two crimes charged in the instant case were tried separately, evidence of the second sale of heroin would be admissible in a trial on the first sale to establish that appellant was the person who committed the crime. Two bags of heroin were introduced by the Commonwealth; appellant presented an alibi defense and denied that she sold the first bag. Evidence that she had in fact sold an identical bag

of heroin only two hours after the sale in question would be relevant to proving that appellant was the seller of the first bag as well.

■ In regard to the second sale, appellant admitted the sale but claimed that she was entrapped. In a separate trial on the second sale, evidence of the first sale would be admissible to show that appellant made the sale in question with the requisite criminal intent. Evidence of a sale just two hours prior to the sale in question would be relevant on the issue of entrapment, and on appellant's intent in general. Because the tests for proper consolidation were satisfied, the lower court did not abuse its discretion in denying appellant's pre-trial motion to sever the two charges.

Appellant's final argument is that the court's instruction that the burden of proving an entrapment lies with the defendant offends the Due Process Clause of the Fourteenth Amendment. Because the court's instructions paralleled the language of 18 Pa.C.S. § 313(b),[4] appellant has, in effect, challenged the constitutionality of that statute. Resolution of this issue depends on whether the existence of an entrapment constitutes a material element of a crime. If so, the Commonwealth would necessarily have the burden of proving the absence of an entrapment beyond a reasonable doubt. See, e. g., *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975).

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 313(b): " . . . a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment." Appellant's brief claims that the court instructed the jury that the defendant was obligated to prove an entrapment beyond a reasonable doubt. This allegation is totally unsupported by the record. On two occasions the court used the phrase "preponderance of the evidence" and defined that term for the jury.

■   The present test for entrapment is set forth in 18 Pa.C.S. § 313(a):

"(a) *General rule.*—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

"(1) making knowingly false representation designed to induce the belief that such conduct is not prohibited; or

"(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it."   Prior to the adoption of the 1972 Crimes Code, the Pennsylvania test for entrapment was " . . . whether the criminal design was created by the officer or whether the officer merely afforded an opportunity for the commission of a crime by the person already disposed to commit the crime . . . "   *Commonwealth v. Harrison,* 228 Pa.Super. 42, 44, 323 A.2d 848, 849 (1974). See also *Commonwealth v. Berrigan,* 234 Pa.Super. 370, 343 A.2d 355 (1975); *Commonwealth v. Klein,* 222 Pa. Super. 409, 294 A.2d 815 (1972); *Commonwealth v. Conway,* 196 Pa.Super. 97, 173 A.2d 776 (1961).[5]   This test was derived from the majority opinions in *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and *Sorrells v. United States,* 287 U.S. 435, 53 S. Ct. 210, 77 L.Ed. 413 (1932), which focused on the predisposition of the accused to commit the crime.   *See also* *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).   The present codification of entrapment finds its origin in Mr. Justice FRANKFURTER'S

---

5.   Under the prior test for entrapment, the inquiry is focused on whether the defendant was predisposed to commit the crime.   In that context, therefore, the burden of proving the absence of an entrapment is on the Commonwealth.   See *Commonwealth v. Loccisano,* 238 Pa.Super. 714, 356 A.2d 828.

concurring opinion in *Sherman*: "This does not mean that the police may not act so as to detect those engaged in criminal conduct and ready and willing to commit further crimes should the occasion arise. Such indeed is their obligation. It does mean that in holding out inducements they should act in such a manner as is likely to induce to the commission of crime only these persons and not others who would normally avoid crime . . .. This test shifts attention from the record and predisposition of the particular defendants to the conduct of the police and the likelihood, objectively considered, that it would entrap only those ready and willing to commit crime." 356 U.S. at 383–384, 78 S.Ct. at 826. Thus, the test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed.[6] To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit crime.[7]

---

**6.** In *Commonwealth v. Conway*, supra, our Court seemingly announced a test for entrapment which combined elements of both the subjective and objective tests: "This rule requires, before the defence becomes available, (1) a defendant not disposed to commit the crime, and also (2) police conduct likely to entrap the innocently disposed." 196 Pa.Super. at 104, 173 A.2d at 780. The focus remained, however, on the questions of inducement (did the government put in motion the particular offense) and predisposition of the accused. See, e. g., *United States v. Kros*, 296 F.Supp. 972 (E.D.Pa.1969); *Commonwealth v. Klein*, supra (HOFFMAN, J., concurring).

**7.** The objective test was recommended by the drafters of the Model Penal Code: "If the defense is available only to persons who are 'innocent,' the full deterrent effect of the defense is undermined. Police conduct toward a particular defendant may be seriously objectionable even though he entertained a purpose to commit crime prior to any inducement by officials. Law enforcement officers may feel free to employ forbidden methods if the

■ The entrapment section, 18 Pa.C.S. § 313, is contained in the Chapter of the Crimes Code entitled "Culpability," which, according to one commentator, "is devoted to the question of when the defendant has the necessary intent." Jarvis, *Pennsylvania Crimes Code and Criminal Law*, § 301 at 2. Generally, this proposition is correct; the defenses enumerated in the chapter negate the intent necessary for criminal liability. See 18 Pa.C.S. § 304 (ignorance or mistake) 18 Pa.C.S. § 308 (intoxication or drugged condition); 18 Pa.C.S. § 309 (duress); 18 Pa. C.S. § 310 (military orders); 18 Pa.C.S. § 311 (consent); 18 Pa.C.S. § 312 (de minimis infractions). The objective standard of entrapment, however, does not fall into this category. As previously discussed, the defense concedes the commission of a criminal offense. Unlike the subjective formulation of the entrapment defense, however, the state of mind of the particular defendant is irrelevant. Thus, under 18 Pa.C.S. § 313(a)(2), a defendant who asserts the defense of entrapment will succeed if it is shown that the police conduct would have induced an innocent person to commit the crime.

The instant case, therefore, does not present the same situation as *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974), and *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). In *Demmitt*, the Court reiterated that the Commonwealth has the burden of proving sanity beyond a reasonable doubt when the defendant places his sanity in issue. The Court held that the Commonwealth cannot sustain its burden by relying on a presumption of

'innocent' are freed but the habitual offenders, in whom the police have the greater interest, will nevertheless be punished . . . . The very notion that certain police conduct may be improper in relation to the 'innocent' but acceptable when addressed to the 'guilty' seems incompatible with the ideal of equality before the law . . . . Further, to permit the use against a previously convicted person, of police measures not permitted toward the rest of society is to fix a permanent status of criminality against the hopes of enlightened penology." Model Penal Code, Tentative Draft No. 9, Comment, § 2.10(1) at 20.

sanity, but must offer evidence. In *Rose*, the Court discarded the traditional view that the burden of proving an affirmative defense was on the defendant, and held that "[i]n any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime. One of such elements in first degree murder is, of course, a specific intent to kill. This burden is neither increased nor diminished by an attempt by a defendant to disprove the element of intent by a showing of lack of capacity, due to intoxication, to form such an intent. . . . it is error for the trial judge to instruct the jury that there is a burden upon the defendant to establish his intoxication by a preponderance of the evidence. Such evidence is offered by the defense solely to cast doubt upon the existence of the specific intent to kill and, as with all elements of the crime, the defendant has no burden of persuasion." 457 Pa. at 389, 321 A.2d at 884. Insanity and intoxication directly negate the element of criminal intent; entrapment does not. Whether the burden of proving an entrapment may be placed upon the defendant, therefore, cannot be determined from the holdings of *Rose* and *Demmitt*. Furthermore, the Court in *Rose* relied upon the viewpoint expressed by Professor McCormick, which does not address the defense of entrapment: "'As to all these claims for exoneration [self-defense, duress, insanity, intoxication], their truth goes in final analysis to the guilt, to the rightness of punishing, the accused. Thus it seems inconsistent to demand as to some elements of guilt, such as an act of killing, that the jury be convinced beyond a reasonable doubt, and as to others, such as duress or capacity to know right from wrong, the jury may convict though they have such doubt. Accordingly, the recent trend is to treat these so-called matters of defense as situations wherein the accused will usually have the first burden of producing evidence in order that the issue be raised and submitted to the jury, but at the close of the evidence the

jury must be told that if they have a reasonable doubt of the element thus raised they must acquit.'" 457 Pa. at 388, 321 A.2d at 884, quoting, McCormick, Evidence, § 341 at 802 (2d Ed.1972).

The objective test of entrapment does not affect the guilt of the accused; guilt is conceded. The defense allows an otherwise guilty defendant to go unpunished because our legislature has determined that seriously objectionable police conduct may not be tolerated. See, n. 6 supra. Viewed in this manner, entrapment is analytically closer to the exclusionary rule for fourth amendment violations than it is to defenses which tend to show that the accused did not act with the required kind of culpability necessary for conviction. Because entrapment does not negate an element of the offense,[8] it is constitutionally permissible to place the burden of proving an entrapment on the criminal defendant. This conclusion is supported by the drafters of the Model Penal Code: "The defense of entrapment does not negative an element of the crime . . . The defense does not assert that the defendant has not engaged in criminal activity nor does it truly seek to excuse or justify a criminal act. The defense is, in fact, a complaint by the accused against the state for employing a certain kind of unsavory enforcement. The accused is asking to be relieved of the consequences of his guilt by objecting to po-

8. "Elements of an offense" are defined in 18 Pa.C.S. § 103 as "[s]uch conduct or such attendant circumstances or such a result of conduct as:
    (1) is included in the description of the forbidden conduct in the definition of the offense;
    (2) establishes the required kind of culpability;
    (3) negatives an excuse or justification for such conduct;
    (4) negatives a defense under the statute of limitations; or
    (5) establishes jurisdiction or venue."
Entrapment can conceivably fall only within subsection (2). As discussed earlier, however, although the entrapment defense is contained in the culpability chapter of the Crimes Code, it does not affect the defendant's culpability. Thus, the absence of an entrapment is not a material element of the defense.

lice tactics. He is a plaintiff and should be required to come forward with the evidence and to establish the main elements of his claim by a preponderance of proof." Model Penal Code, Tentative Draft No. 9, Comment, § 2.10(2) at 20–21.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.