615 A.2d 442

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth L. RITTER, Appellant.**

Superior Court of Pennsylvania.

Submitted July 20, 1992.

Filed Oct. 28, 1992.

432

Norman A. Levine, New Castle, for appellant.

William M. Panella, Dist. Atty., New Castle, for Com., appellee.

Before TAMILIA, HUDOCK and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of sentence for one count of intimidation of witnesses,[1] one count of terroristic

1. 18 Pa.C.S.A. § 4952(a)(3).

threats,[2] three counts of delivery of a controlled substance,[3] and one count of conspiracy to commit delivery of a controlled substance.[4] Appellant, Kenneth L. Ritter, presents the following claims:

I.  Whether the trial court erred in failing to grant [appellant's] motion objecting to the notice of consolidation and [appellant's] motion to sever?

II.  Whether the court erred in denying [appellant's] motion for disposition in lieu of trial or criminal punishment?

III.  Whether the court erred in failing to [follow appellant's] proposed voir dire questions?

IV.  Whether the inflammatory remarks made by the prosecutor in his opening statement prejudiced [appellant] and require that a new trial be granted?

V.  Whether the court erred in granting the Commonwealth's motion *in limine* requesting that testimony of a psychiatrist regarding [appellant's] susceptibility to inducement and persuasion be prohibited?

VI.  Whether the actions of the law enforcement officials and the informant amounted to entrapment as a matter of law which was not rebutted by the Commonwealth with sufficient evidence?

VII.  Whether the jury's verdicts were against the weight of the evidence?

VIII.  Whether the Commonwealth failed to produce sufficient evidence to sustain the jury's verdicts of guilty?

IX.  Whether the court erred in not giving [appellant's] proposed jury instructions?

X.  Whether the prosecutor's inflammatory remarks in closing prejudiced [appellant's] case and warrant a new trial?

2.  18 Pa.C.S.A. § 2706.

3.  35 Pa.C.S.A. § 780–113(a)(30).

4.  Appellant was found guilty of two counts of conspiracy to commit delivery of a controlled substance, 18 Pa.C.S.A. § 903(a)(1) and (2), which merged for sentencing purposes.

Appellant's Brief at 27–28.[5]  For the reasons set forth below, we affirm.

On October 15, 1988, appellant was charged with three counts of possession with intent to deliver, three counts of delivery of a controlled substance, and one count of conspiracy to deliver a controlled substance.  On October 17, 1988, as a result of appellant's interactions with an undercover informant, appellant was further charged with one count each of intimidation of witnesses, terroristic threats, and conspiracy to commit terroristic threats and intimidation of witnesses.

On April 23, 1990, a jury convicted appellant of one count of intimidation of witnesses, one count of terroristic threats, three counts of delivery of a controlled substance, three counts of possession of a controlled substance and one count of conspiracy to deliver a controlled substance.  Post-trial motions were filed and denied.  On February 25, 1992, the trial court sentenced appellant to serve an aggregate term of imprisonment of nine-years-and-nine-months-to-nineteen-years-and-six-months.

## I.

Appellant first contends that the trial court erred in failing to grant appellant's pre-trial motion to sever the drug charges from the intimidation charges.  We initially point out that the decision to sever trials "is one within the sound discretion of the trial judge and will not be disturbed on appeal absent a manifest abuse of that discretion."  *Commonwealth v. Lindenmuth*, 381 Pa.Super. 398, 409, 554 A.2d 62, 67 (1989), *appeal denied*, 522 Pa. 624, 564 A.2d 916 (1989) (citing *Commonwealth v. Morales*, 508 Pa. 51, 61, 494 A.2d 367, 372 (1985) (citations omitted)).  Furthermore, this court will not overturn a decision to consolidate charges absent a real potential for prejudice.  *Commonwealth v. Pirela*, 398 Pa.Super. 76,

---

5.  We note that appellant burdens this court with ten claims comprising two pages and thirty-two lines.  This is in excess of Pa.R.A.P. 2116(a)'s single page, fifteen-line limit.  Although we strongly disapprove of such a blatant disregard for appellate rules, in the interest of justice, we will nevertheless consider all of appellant's claims.

83, 580 A.2d 848, 852 (1990), *appeal denied,* 527 Pa. 672, 594 A.2d 658 (1991) (citation omitted).

Pa.R.Crim.P. 1127(A)(1)(a) provides:

Offenses charged in separate indictments or informations may be tried together if: ... the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion....

*Id.* We find that the offenses charged meet the requirements of Pa.R.Crim.P. 1127(A)(1)(a) and, therefore, the court did not abuse its discretion in consolidating the two sets of indictments for trial.

▉ First, it is clear that the evidence of each of the crimes would have been admissible in a separate trial for the other. While generally inadmissible, evidence of other crimes is admissible when it is relevant to establish motive or intent. *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988). Accordingly, evidence of the drug deliveries would be admissible in a separate trial on the charges of terroristic threats and intimidation of witnesses to show motivation for those threats.

Likewise, evidence of appellant's threats would be admissible in a trial on the charges of drug delivery, despite the fact that the threats occurred after the drug deliveries. In *Commonwealth v. Green,* this court found that "[even though] evidence of subsequent offenses ... does not establish that a defendant possess the requisite intent prior to the commission of the crime being tried ... we nonetheless agree ... that the testimony admitted went to show the state of mind or intent of appellant at the time [of the commission of the crime being tried]." *Commonwealth v. Green,* 351 Pa.Super. 170, 177, 505 A.2d 321, 325 (1986) *appeal denied,* 513 Pa. 633, 520 A.2d 1384 (1987). In the case at bar, as in *Green,* the testimony concerning the crimes of terroristic threats and intimidation of witnesses related to events which were close in time to [6] and

---

6. Appellant's threats to the informant occurred only five days after appellant's final drug delivery.

involved the same persons as [7] the drug deliveries. *See id.* Hence, this testimony would be admissible in a trial on the charges of drug delivery to show state of mind or intent of appellant.

Second, we find that the facts of each offense were easily separable and involved no complicated fact situations that could lead to confusion. The charges of October 15 merely involved the possession and delivery of controlled substances while the charges of October 17 focused on appellant threatening a potential witness. Accordingly, joining the two charges was not an abuse of discretion.

## II.

■ Appellant's next contention is that the trial court improperly denied appellant's motion for disposition in lieu of trial or criminal punishment under 35 Pa.S.A. § 780–118(a). This claim is meritless.

35 Pa.S.A. § 780–118(a) provides:

If a person charged with a nonviolent crime claims to be drug dependent or a drug abuser and prior to trial he requests appropriate treatment ... in lieu of criminal prosecution, a physician ... shall be appointed by the court to examine, if necessary, and to review the accused's record and advise the government attorney, the accused and the court in writing setting forth that for the treatment and rehabilitation of the accused it would be preferable for the criminal charges to be held in abeyance or withdrawn in order to institute treatment for drug dependence or for the criminal charges to be prosecuted.

*Id.* Appellant argues that this provision mandates appointment of a physician to evaluate appellant's status. We disagree.

"Words and phrases shall be construed according to their common and approved usage...." 1 Pa.C.S.A. § 1903. We read the phrase "shall be appointed by the court to examine, if

7. Both the drug deliveries and the threats involved the police, the informant and appellant.

necessary, and to review the accused's record ..." as affording the trial court complete discretion. This interpretation is further supported by the language of 35 Pa.S.A. § 780–118(c) which provides that, when a physician is appointed, the trial court is not bound by that physician's recommendation. Consequently, appellant's second claim fails.

## III.

Appellant next contends that the trial court improperly rejected the following proposed voir dire questions:

7. Have you or any member of your immediate family ever served on a grand jury panel or appeared as a witness before a grand jury?

16. Under the law, a [d]efendant may not be convicted if he is entrapped into committing a crime by either a law enforcement official or a person acting in cooperation with a law enforcement official. Entrapment occurs when either a law enforcement officer or a person acting in cooperation with a law enforcement official employs methods of persuasion or inducement which create a substantial risk that such offense will be committed by persons other than those who are ready to commit such an offense. Do you have any mental reservations about this supposition of law?

22. If you were a [d]efendant in a criminal case, would you be satisfied to have a person with your present beliefs[,] opinions and state of mind on a jury which would decide your guilt or innocence?

Appellant's Brief at 41–42. This claim is meritless.

Voir dire examination is provided "to secure a competent, fair, impartial and unprejudiced jury." *Commonwealth v. Hoffman*, 263 Pa.Super. 442, 446, 398 A.2d 658, 660 (1979) (citation omitted). It is well-settled that the scope of voir dire is within the discretion of the trial court, whose decisions will not be overturned absent a flagrant abuse of discretion. *Commonwealth v. Richmond*, 316 Pa.Super. 304, 309, 462 A.2d 1362, 1364–1365 (1983).

■ Question number seven inquires into the venireperson's prior jury experience. Our Supreme Court has previously held that "[t]here is no reasonable correlation between a juror's prior jury service and his ability to render a fair and just verdict...." *Commonwealth v. Johnson*, 452 Pa. 130, 136, 305 A.2d 5, 8 (1973) (citation omitted). Since this question is irrelevant, it was properly disallowed.

■ Question sixteen, too, was properly rejected. The first part of appellant's proposed question was an instruction on the defense of entrapment, clearly within the province of the court. *See Commonwealth v. Perea*, 252 Pa.Super. 272, 277, 381 A.2d 494, 497 (1977) (where the voir dire question covers matters within the province of the court to address in its instructions to the jury, then it is properly rejected). Moreover, appellant's inquiry into whether one would "have any mental reservations" about the law of entrapment was improper. "It is ... well established that voir dire is not to be used to attempt to ascertain a prospective juror's present impressions or attitudes." *Commonwealth v. Drew*, 500 Pa. 585, 589, 459 A.2d 318, 320 (1983). This was, undoubtedly, the question's purpose. Accordingly, question 16 was properly excluded from voir dire.

■ Finally, the trial court's exclusion of question twenty-two was not an abuse of discretion. Question twenty-two, in essence, asks the venireperson "whether he would be a fair juror." This question goes to the very purpose of voir dire: to ensure that each juror will render a fair verdict. Without demonstrating how the questions posed at voir dire were inadequate in this respect, appellant has no claim. Accordingly, we find no abuse of discretion.

## IV.

■ Appellant alleges that the opening statement of the attorney for the Commonwealth deprived the defendant of a fair trial. Specifically, appellant objects to the following portions of appellee's opening statement:

You know that there's a drug problem nationwide, that New Castle hasn't escaped that general drug problem....

You'll learn ... that there was a large investigation in Lawrence County that extended really over about a two year period, from 1986 through 1988; that there were many agents and troopers involved in this investigation that came to a head on October 25, 1988, when there was a large-scale arrest of these people who had been investigated over those past two years. You'll discover that this is one of the arrests that came out of that large bust from October of '88....

After the third buy, these police officers went to the home of who he considered to be the source of Mr. Ritter, that was a name William Lanigan that you heard during voir dire, and they searched his home and they searched his grounds and they withdrew a substantial sum of money from that location....

Appellant's Brief at 43. We find that the prosecutor's opening statements were proper.

It has long been the rule in Pennsylvania that "[t]he opening statement of the prosecution should be limited to a statement of the facts which it intends to prove and the legitimate inferences deduced therefrom." *Commonwealth v. Duffey*, 519 Pa. 348, 361, 548 A.2d 1178, 1184 (1988); *Commonwealth v. Martin*, 461 Pa. 289, 336 A.2d 290 (1975). "The opening statement serves to inform the jury how the case will develop, its background, and what will be attempted to be proven at trial." *Commonwealth v. Nolen*, 390 Pa.Super. 346, 358, 568 A.2d 686, 693 (1989) (citation omitted), *appeal granted* 525 Pa. 644, 581 A.2d 570 (1990).

Regarding the first two statements, they provided the jury with a factual setting for the case and served to help them with any references to the undercover operation in the case. The third statement was properly related to what the Commonwealth attempted to prove at trial, that is, appellant's criminal conspiracy with Lanigan. Consequently, these statements were proper.

## V.

Appellant's fifth contention is that the trial court committed error by barring evidence of appellant's subjective reactions offered to support his defense of entrapment. After carefully reviewing the record and the parties' briefs, we conclude that the trial court has adequately addressed and properly disposed of this contention in its opinion. Accordingly, we affirm the trial court's resolution of this issue for the reasons stated therein.

## VI.

Appellant next contends that the trial court erred in failing to rule that appellant was entrapped as a matter of law. We disagree.

The defense of entrapment is established when the defendant proves by a preponderance of the evidence that, for the purpose of obtaining evidence of the commission of an offense, a public law enforcement official or a person acting in cooperation with such an official:

(1) mak[es] knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employ[s] methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

18 Pa.C.S.A. § 313.[8]

"Whether an 'entrapment has occurred is a question for the jury, unless the evidence points to only one conclusion, in which case it may be decided as a matter of law.' " *Common-*

8. Although 18 Pa.C.S.A. § 313(b) provides that defendant "prove[ ] by a preponderance of the evidence that his conduct occurred in response to an entrapment[,]" we have held that the test for entrapment is an objective one. *Commonwealth v. Weiskerger,* 520 Pa. 305, 312, 554 A.2d 10, 14 (1989); *Commonwealth v. Jones,* 242 Pa.Super. 303, 311, 363 A.2d 1281, 1285 (1976). Hence, if the finder of fact is persuaded that the conduct of the police was such that there is a substantial risk that such an offense will be committed by persons other than those who are ready to commit it, then they must find that there was entrapment, regardless of defendant's predisposition. *See id.*

*wealth v. Wright,* 396 Pa.Super. 276, 288, 578 A.2d 513, 519 (1990) (citing *Commonwealth v. Clawson,* 250 Pa.Super. 422, 425–426, 378 A.2d 1008, 1010 (1977)), *appeal denied,* 526 Pa. 648, 585 A.2d 468 (1991). In the case at hand, appellant contends that, as a matter of law, there was entrapment. In support of this claim, appellant points to *Commonwealth v. Wright.*

In *Wright,* we held that, as a matter of law, appellant was entrapped into selling unlawful controlled substances. Our decision was based upon testimony from both the defendant and the informant which demonstrated that (1) the informant re-kindled a friendship with defendant and used that friendship to encourage the defendant to deliver drugs to him; (2) the police, acting through the informant, fabricated stories to cause the defendant to believe the informant had no other way of obtaining the drugs; and (3) the defendant purchased the drugs with the informant's money and received no benefit from selling the drugs.[9] The situation in the case at hand, however, is easily distinguishable.

In the case at bar, informant's friendship with appellant consisted of occasional mutual cocaine use. N.T., April 18, 1990 at 22–23. Unlike in *Wright,* there was no friendship which the police could use to entrap appellant. The police did no more than afford appellant an opportunity to make a sale of cocaine. Furthermore, the informant testified that it was appellant himself who initiated the drug transactions. N.T. at

---

**9.** Although this court in *Wright* purports to apply the objective test, it does consider the predisposition of the defendant by examining his motivation for selling the drugs. In the case at hand, we apply the purely objective test set forth by this court *Commonwealth v. Jones,* 242 Pa.Super. 303, 311, 363 A.2d 1281, 1285 (1976) ("Thus, the test for entrapment has shifted in emphasis from a consideration of the particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit crime." (footnotes omitted)). Our holding in *Jones* was subsequently adopted by *Commonwealth v. Weiskerger,* 520 Pa. 305, 554 A.2d 10 (1989).

6. Accordingly, we find that the evidence in the case at hand does not establish entrapment as a matter of law.

## VII.

Appellant's seventh claim consists of two arguments. First, appellant contends that the jury's finding that there was no entrapment is against the weight of the evidence. We have held that "[a] court will grant a new trial on the ground that the verdict was against the weight of the evidence only where it 'appear[s] from the record that the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity to prevail.' " *Commonwealth v. Laing,* 310 Pa.Super. 105, 110, 456 A.2d 204, 207 (1983) (citing *Commonwealth v. Barnhardt,* 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981)).

The law requires the defendant to prove, by a preponderance of the evidence, the elements of entrapment. *See* 18 Pa.C.S.A. § 313(b). In disposing of appellant's sixth claim, we held that the issue of entrapment was properly submitted to the jury. Since the trier of fact is free to believe all, some or none of the evidence that was presented, it was reasonable for the jury to find that appellant was not entrapped. *See Commonwealth v. Favinger,* 358 Pa.Super. 245, 249–250, 516 A.2d 1386, 1388 (1986) (citation omitted), *appeal denied,* 516 Pa. 612, 531 A.2d 779 (1987). We are unable to find that the jury's verdict was "so contrary to the evidence as to shock one's sense of justice." Consequently, the defense of entrapment was properly denied.

Appellant also argues that because the jury acquitted appellant of conspiracy to commit terroristic threats it is inconsistent to also find him guilty of the crime of terroristic threats and intimidation of witnesses. The crime of conspiracy, however, is separate and distinct from the underlying substantive crime. "[C]riminal conspiracy does not merge into the completed offense which is the object of the conspiracy." *Commonwealth v. Boerner,* 281 Pa.Super. 505, 516, 422

A.2d 583, 589 (1980); *Commonwealth v. Miller,* 469 Pa. 24, 28, 364 A.2d 886, 887 (1976). Accordingly, the fact that appellant was convicted of one and acquitted of the other does not require a new trial.

## VIII.

Appellant next claims that the evidence was insufficient to support the verdict. Specifically, appellant contends that the Commonwealth failed to produce sufficient evidence with which to (1) rebut the entrapment defense proved by appellant and (2) support its convictions of terroristic threats and intimidation of witnesses. As to the first part of this claim, we have already established that there was sufficient evidence for the jury to find that there was no entrapment.

Addressing the second part of this claim, the test for evaluating the sufficiency of the evidence in a criminal case is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all reasonable inferences therefrom upon which the court could properly have based its verdict, there is sufficient evidence to enable the trier of fact to find beyond a reasonable doubt every element of the crime of which appellant has been convicted. *Commonwealth v. Davis,* 491 Pa. 363, 369, 421 A.2d 179, 182 (1980) (citations omitted).

The offenses of terroristic threats and intimidation of witnesses are defined as follows:

A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another ... or in reckless disregard of the risk of causing such terror.... 18 Pa.C.S.A. § 2706.

A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to: ... Withhold any testimony, information, document or thing relating to the commission of a crime, to

an attorney representing a criminal defendant. 18 Pa. C.S.A. § 4952(a)(3).

We find that there was sufficient evidence to support the jury's conviction of appellant for the crimes of terroristic threats and intimidation of the Commonwealth's informant. Examining the evidence in the light most favorable to the Commonwealth, the following facts were adduced at trial:

> Appellant told Ortiz that if he was an informant, he should leave town. Appellant also told Ortiz that if the individual involved in the buy was a police officer, he would kill Ortiz.

N.T., April 18, 1990 at 16. These facts were sufficient to enable the trier of fact to find beyond a reasonable doubt every element of the crimes at issue. Hence, the verdict was proper.

## IX.

Appellant next argues that the trial court erred in rejecting appellant's proposed jury instructions. Specifically, appellant argues that the trial court failed to give the complete instruction proposed by the appellant on (1) entrapment, (2) proposed jury instruction number three and (3) the Wiretapping and Electronic Surveillance Act. These claims are meritless.

The trial court is free to select its own form of expression so long as the subject is adequately, accurately and clearly presented to the jury. *Commonwealth v. Smith,* 511 Pa. 343, 355–356, 513 A.2d 1371, 1377 (1986), *cert. denied* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987). "A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations." *Commonwealth v. Person,* 345 Pa.Super. 341, 345, 498 A.2d 432, 434 (1985) (citations omitted).

First, the trial court properly instructed the jury on the issue of entrapment:

> [A] police officer or a law enforcement official or personal [sic] acting in cooperation with the law enforcement official perpetrates an entrapment if, for the purpose of obtaining

evidence of a crime, he [i]nduces or encourages another person to engage in any conduct constituting that crime by employing methods of persuasion or inducement which create a substantial risk that such a crime will be committed by that person.

N.T., April 23, 1990 at 129. This was an adequate and accurate statement of the law.[10]

■ Appellant's proposed jury instruction number three provided that:

[T]he defendant has presented evidence that on September 17, 1988 he did not know whether Mr. Ortiz was cooperating with the authorities in an investigation against Mr. Ritter. Mr. Ritter testified he approached Mr. Ortiz with the intent to inform him that his friend, Scott, may be a law enforcement official.

Appellant's Brief at 54. This statement serves as a summary of testimony produced at trial and as such is more properly introduced at closing argument. As stated above, the trial court is only required to instruct the jury on the law.

■ Appellant further maintains that the trial court failed to give instructions concerning the Wiretap Act. Specifically, appellant requested the charge to show that a wiretap could have been used, and that because a wiretap was not used in the investigation, it is more likely that appellant was unlawfully induced. Since the requested charge does not directly bear on the matters to be proven, an instruction to the jury was not required.

### X.

Finally, appellant contends that the Commonwealth's closing argument was improper on four bases:

A. The prosecutor stated he was unable to admit the statement of witness Michael Ortiz to Trooper Fred Neal as evidence because it was hearsay and defense counsel knew it was inadmissible hearsay ...;

10. *See* VI, *supra.*

B. The prosecutor stated he was unable to ask witness Michael Ortiz whether Michael Ortiz purchased any controlled substances from Defendant Ritter on occasions other than those charged in the information. The prosecutor also suggested defense counsel could have asked Michael Ortiz the question as to whether he purchased controlled substances from Defendant Ritter in the past. This comment impermissibly shifted the burden of proof to the Defendant who has no burden to come forward with any evidence ...;

C. The Prosecutor stated the testimony of witness Michael Ortiz's Wife would not be admissible and defense counsel knew the testimony of witness Michael Ortiz's wife was inadmissible ...;

D. The prosecutor referred to the crimes in question as crimes against the citizens of the State/Commonwealth of Pennsylvania....

Appellant's Brief at 55–56.

A prosecutor's remarks during closing argument will seldom mandate a new trial. "Even where the language of a prosecutor is intemperate, uncalled for and improper, a new trial is not required unless 'its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.' " *Commonwealth v. Burton,* 491 Pa. 13, 22, 417 A.2d 611, 615 (1980) (citing *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975)) (citation omitted).

The first three statements to which the appellant takes exception were all made in reaction to remarks made in defense counsel's closing argument. Since a prosecutor is generally entitled to rebut remarks made by defense counsel, *Commonwealth v. Floyd,* 506 Pa. 85, 93, 484 A.2d 365, 369 (1984) ("Because we view the remarks complained of as inspired by defense counsel's own, the conduct complained of is not cause for reversal....") (citations omitted), these statements were all permissible.

■ The first statement complained of explained that Ortiz's statement to agent Neal was not submitted because it was ruled inadmissible hearsay. This statement was in direct response to appellant's closing remark that "[i]f the statement that Mr. Neal took from Mr. Ortiz is consistent with Mr. Ortiz's testimony, why didn't agent Neal take the stand and tell you what Ortiz told him." N.T., April 23, 1990 at 17.

The prosecutor's second statement, relating to informant's purchases on dates other than those at issue, was also proper. In his closing argument, defense counsel stated:

> Now what did the Commonwealth give you to rebut that evidence? Let's go through it. They failed to present one scintilla, nothing, no evidence of Mr. Ritter ever selling or distributing drugs other than July 11, August 1 and September 12.

N.T. at 45. Again, the prosecutor's statement was clearly a rebuttal of a prior statement made by appellant.

The third statement by the prosecutor explained why the prosecutor failed to call Mrs. Ortiz, informant's wife, to the stand. This, too, was in direct response to a closing remark by appellant:

> Now, ask yourself this one, too, who was cooking dinner for Mr. Ortiz that night? Mrs. Ortiz. Why didn't the Commonwealth call Mrs. Ortiz to the stand and say, oh, I remember Ken Ritter coming, he was with Bill Lanigan, and they scared the hell out of poor Michael. I Don't know.

N.T. at 17.

The prosecutor's fourth remark was also proper. In closing argument, the prosecutor made the following statement:

> [W]hat was charged in this case was a crime against the Commonwealth. What is that mysterious big label, Commonwealth? Nothing more than every person who lives in this Commonwealth, who lives in our State of Pennsylvania. It's a crime against the citizens of this state.

N.T. at 86. In *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 427 A.2d 1356 (1981), the prosecutor, in closing, stated that "[t]his defendant, as all defendants who come before this

Court, is charged with a crime against people, citizens not only in the community, but the entire State of Pennsylvania...." *Id.*, 285 Pa.Super. at 434, 427 A.2d at 1364 (citing N.T. at 566–567). This court found the remark to be proper. The statement in the instant case is identical to the above one. Accordingly, the statement did not warrant a new trial.

For all of the above-mentioned reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.